*In re* VALIDATION OF BONDS OF MCNEILL SPECIAL CONSOL. SCHOOL DIST.

(Division B.  April 24, 1939.)

[188 So. 318.  No. 33676.]

**J. M. Morse,** of Poplarville, for appellant.

Hathorn & Williams, of Poplarville, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

This is an appeal from the judgment of the Chancery Court of Pearl River county, validating a $10,000 bond

issue of the McNeill Special Consolidated School District. A petition was filed, as shown by the order of the Board of Supervisors, signed by twenty percent of the qualified electors, praying for the issuance of $10,000 of bonds of the said school district, to be used for building and equipping a new school building in the district. There is no complaint in regard to the sufficiency of the petition to the Board, nor of the action of the Board in ordering the election on the question of the issuance of said bonds, this having been done in accordance with the requirements of the law.

The election having been ordered, the election commissioners of the county met and revised the registration and poll books, gave notice of the election, and certified their action to the Board of Supervisors; which report of the commissioners was spread upon the minutes of the Board; and the election was declared to have resulted favorably to the issuance of such bonds. It is only in regard to the election that complaint is made in regard to the proceedings in the issuance of said bonds.

It is unnecessary to set out the entire report of the election commissioners, but only such part as pertains to the revisal and correction of the poll books, and the certificate in that regard to the Board of Supervisors. The pertinent part of this report as applied to the bond issue reads as follows: "We further certify that the ballots used in said election had printed thereon a brief statement of the amount and purpose of the proposed bond issue, and the words, 'for the bond issue,' and 'against the bond issue' as is shown by one of the tickets printed and used by the qualified electors voting in said election. We further certify that we determined at the meeting of the election commissioners first preceding said election, as required by section 6211 of the Mississippi Code of 1930, the number of qualified electors residing in said school district. The number of said qualified electors residing in said district and determined by us according to law are 164. We further certify that the number of

votes cast at said election is 115; the number cast in favor of said bond issue was eighty-four votes; the number of votes cast against the said bond issue was 31 votes; and we further determined and certify to the Board of Supervisors of said county, that the said election was carried by a majority of all the qualified electors residing in said McNeill Consolidated School District. We therefore hereby certify to the Board of Supervisors of said county that the said election was carried in favor of the issuance of said bonds by a majority of all the votes cast in the said election.''

To this was attached notice of the election, proof of publication of the notice, copy of the ballot. Whereupon the Board, as stated, proceeded to declare the election to have been carried in favor of the bond issue, ordered the issuance of the bonds, and that a copy of the proceedings be certified to the State Bond Attorney for validation. The State Bond Attorney certified that the bonds were legally issued, that all proceedings were regular, and that the bonds should be validated.

The cause was docketed, and the appellees, Greene, Smith, Dill, Hawthorne and Johnson filed objections to the bond issue as follows: ''1. The Chancery Court has no jurisdiction in this matter because there is now pending in the Circuit Court of Pearl River county, Mississippi, a mandamus suit to compel the Election Commissioners of Pearl River county to meet and to properly count the ballots which they illegally refused to count, a true copy of said proceedings being herewith attached and marked Exhibit 'A.' 2. That the Circuit Court has jurisdiction of this matter by the mandamus suit fully and completely, the same being filed within the time as required by law (see date of filing as shown by the exhibit), and the Chancery Court is powerless to do or perform anything in the premises with reference to the validation of the bonds until the Circuit Court of Pearl River county has passed upon the matter, and relinquished its jurisdiction of the matter of the mandamus

suit above referred to. 3. That the bonds should not be validated because the district had no authority under the law to issue the bonds because the same did not carry in the election held. The objections, therefore, move the Court to abate this suit for the validation of the bonds until the Circuit Court of Pearl River county, Mississippi, can pass upon the mandamus suit.''

To this objection was attached a petition for a writ of mandamus filed in the Circuit Court. This petition for mandamus, among other things, recited the issuance of the bonds of the district in the sum of $10,000, a copy of the order of the Board of Supervisors being made an exhibit to the petition. The petition alleged that the election commissioners, under the law, met and purged the poll books in July, 1938, leaving thereon the names of 197 voters who were qualified to vote upon the question of whether or not the bonds of the McNeill Special Consolidated School District should be issued. It further alleged that at the time of the election of the bond issue, eighty-four voted for, and thirty-one against, the issue; that there were eighty-two qualified electors residing in this District who did not vote, and that under the law under which this election was called, and the bonds attempted to be floated, those qualified electors who do not vote, in effect, vote against the bond issue. It is alleged that on the 29th of July, one day before the election, one of the election commissioners, Mr. Julius Moody, together with Mr. T. J. Gipson, wrote on the side of the poll book the words ''moved,'' ''transferred,'' ''dead'' and the like; a true list of the qualified electors in and for the McNeill Special Consolidated School District being attached as an exhibit ''E'' to the petition; and where the notation was made by Mr. Moody on the list, it is noted on the exhibit with a red lead pencil.

In the petition for mandamus it was further averred that the election managers took the position that these names had been stricken from the poll and registration books, and were not permitted to vote. When the elec-

tion manager reported the result of the election to the election commissioners, and controversy arose, the election commissioners resolved themselves into a court, and heard testimony of all voters who had not voted in the said election; and struck therefrom enough names, so they were able to report to the Board of Supervisors at its adjourned August meeting that the election had been carried in favor of the bonds, a copy of which report was attached to the petition, marked exhibit "E."

It was further alleged that no one, not even the election commissioners, had authority, under the law, to change the registration books after they had met and revised the election rolls, as provided by law; and that the action of the election commissioners in having hearings was without authority of law, and void.

It will be seen from the objections that they were based upon the theory that the filing of the petition for mandamus in the Circuit Court prevented the Chancery Court from proceeding in the matter of the validation until the Circuit Court had disposed of the mandamus suit.

From the statement it will be noted that there was no appeal to the Circuit Court from the order of the Board of Supervisors, issuing the bonds, or directing their issuance, and directing their validation. Instead of appealing directly to the Circuit Court on a proper bill of exceptions, as might have been done, the objectors proceeded to file a petition for mandamus. It will also be noted that the election commissioners had certified to the Board of Supervisors the number of voters living in the district, the number who voted in the election, both for and against the bond issue, and the number of voters not voting in the election; and had certified that the majority of all the voters in the Consolidated School District had voted in favor of the bond issue.

The mandamus, under the facts recited, would not lie, because it is not a remedy to review discretion, or to control the judgment of the Board of Supervisors, or other

body undertaking to exercise discretionary power, but is a proceeding merely to compel action—not to control action. A writ of mandamus will not lie to correct a judgment of the board of police; an appeal will lie from their judgment. Board of Police of Attala County v. Grant, 9 Smedes & M. 77, 47 Am. Dec. 102. Mandamus will not lie where there is adequate remedy by appeal. City of Jackson v. McPherson, 158 Miss. 152, 130 So. 287.

The election commissioners, as shown by the record, certified to the Board of Supervisors the essential matters for the bond issue, and had acted, and had determined all the jurisdictional facts essential to the validity of the election, and the Board of Supervisors had found all the jurisdictional facts essential to the issuance of the bonds, and had directed their issuance and validation. Consequently, the pendency of the alleged mandamus suit in the Circuit Court was not a sufficient bar to stop the validation proceedings. Indeed, the Circuit Court could not have granted the relief or the mandamus that was sought by the petition for mandamus, in that suit. It could not substitute a writ of mandamus for the appeal provided by statute. The Chancery Court entertained this view, and decreed that the bonds were valid; and its judgment must be affirmed.

Affirmed.